Alice T. Smith }
vs. } Div. No. 14626
Arthur L. Smith }

### DECISION.
#### August 13, 1929.

FROST, J. This action is now before the Court on respondent's petition to modify decree.

On June 19, 1922, a decree was entered granting to the petitioner a divorce from bed and board. That decree gave to the petitioner the custody of three minor children, an allowance for her and their support of sixty dollars per week, the right to occupy the house of the respondent in the Town of Barrington and the use of the furniture and furnishings contained therein. The respondent was also required to furnish fourteen tons of coal and to pay the taxes and insurance on the property as well as to keep it in repair.

On June 6, 1928, respondent filed a petition setting out among other things that Donald M. Smith had reached his majority; that the condition of his business had changed materially for the worse, so that he was no longer able to comply with the terms of the decree of June 19, 1922; that he possessed an unimproved parcel of land in Barrington which he desired to sell and praying that the weekly allowance for the support of his wife and minor children be decreased and that future payments be conditioned upon the joining of the petitioner with the respondent in a deed of sale of said unimproved parcel, the petitioner to receive the value of her contingent right of dower therein.

This petition was subsequently heard by Mr. Justice Blodgett who found that respondent's income had been substantially lessened and reduced the allowance to be paid weekly by the respondent to fifty dollars. Upon this decision a decree was entered and an appeal taken therefrom to the Supreme Court by the respondent on the ground that the Superior Court had erred in refusing to grant greater relief.

The appeal was heard by the Supreme Court and on June 20, 1929, an opinion was filed sustaining it and remanding the cause to this Court for a rehearing. Respondent, thereafter, on June 26, filed a motion to amend the petition of June 6, 1928, in certain particulars and the present hearing is upon the petition of June 6, 1928, as amended by the motion of June 26, 1929.

Substantially, the respondent now asks the Court to find that the needs of the petitioner are less than in 1922, and that his ability to provide for his family has materially decreased. Assuming these findings to be made he prays that the weekly allowance be reduced; that any allowance to the petitioner be conditioned on her joining in the sale of the vacant corner lot;

that the petitioner be denied the use of the Barrington house together with the furniture and furnishings therein on June 19, 1922, and that he be not required to furnish any coal.

It is proper to consider at the outset petitioner's contention that the effect of certain evidence introduced at the hearing as to respondent's personal conduct since the granting of the original petition for separate maintenance is such as to require a denial of any relief now asked by the respondent. Of that it is sufficient to say that any mature person must inevitably conclude from the evidence referred to that there has been some deviation from the marriage covenant on the part of the respondent. Of such deviation this Court emphatically disapproves but this hearing is not for the purpose of determining primarily the character of respondent's personal conduct, but rather its essential purpose is to ascertain whether there has been a change in the financial condition of respondent or a change in the needs of the petitioner and her children and whether such change or changes require a modification of the conditions under which the parties are living apart. The Court finds that the evidence referred to is insufficient in character and amount to show either that the respondent has not been assiduous in business or that he has been guilty of wasteful expenditures which of themselves would prove statements as to income false or indicate that his personal expenses are unduly large.

The respondent is the president, treasurer and manager of the Smith & Holden Company of 24 South Water street, selling paints, oils, etc., both wholesale and retail. The company was incorporated in 1912, and employs besides Mr. Smith, two salesmen, two bookkeepers and two porters. Mr. Smith is the owner of 200 shares of the capital stock of the company, there being about 254 shares outstanding.

In 1912 his salary was $4,500 (Petitioner's Exhibit 6) which was increased to $5,000, was diminished to $4,000 in 1928, and in October of 1928, was reduced to $3,600, at which figure it now stands. In 1922 he received $1,200 in dividends and a bonus of $600. For the last four years he has received from the Smith & Holden Co. neither dividends nor bonus. In 1922 respondent received $500 from the State as Senator from Barrington and $500 as a Commissioner of Shell Fisheries. He is no longer in the State Senate but is clerk of the Commissioners of Shell Fisheries, which position carries a salary of $2,500.

From respondent's Exhibit 2 it appears that the Smith & Holden Co. at the close of the calendar year 1924 showed a surplus of $24,021.14. This surplus gradually dwindled until at the close of the year 1928, the books not only showed no surplus but an actual deficit of $4,851.84. Mr. Smith testified that competition was exceedingly keen in the paint business and that other concerns as well as his own had suffered greatly in the last few years.

Petitioner was allowed to examine the books of the corporation through a public accountant with the consent of the respondent and such examination was made by Mr. Patrick T. McCarroll of Wall & Co., public accountants. This examination occupied something more than a day. Mr. McCarroll testified that there had been an enormous shrinkage in assets since 1922. The figures relating to respondent's business as shown in Respondent's Exhibit 2 are a basis for grave apprehension for the future.

From all the evidence the Court finds that respondent's income is now $6,100 as against $7,300 in 1922.

As to respondent's expenses it appears that he is living at 579 Potters avenue in Providence, where he has a room for which he pays, with board,

$15 per week. The premiums on life and accident insurance which the Court is willing to allow, total about $90. He owes $1,800 to $2,000 which was borrowed three or four years ago for necessary expenses, as he says, and on a portion of this indebtedness he pays about $55 for interest per year. The taxes on his real estate in Barrington amount in round figures to $300, while the insurance on buildings and furniture run from $110 to $115 per year. Under the decree of Court he furnishes 14 tons of coal for his house in Barrington in which the petitioner is now living, costing about $223. Under the same decree respondent is required to keep his house in repair, and while many repairs have not been made because, as he testifies, of his inability to pay for them, he has expended $1,759.53 from April 23, 1923 to April 11, 1929 (Respondent's Exhibit 1), or approximately $300 per year in the last six years. The evidence shows that the house should be painted and that extensive repairs to the roof are urgently needed. In addition to the foregoing, respondent is now paying his wife $50 per week or $2,600 per year. What the respondent pays for clothes and incidental expenses does not appear.

From the evidence submitted the Court finds that the respondent is now paying to petitioner, for herself and children, either directly or for her shelter and comfort, $3,538 per year or 58% of his annual income. This amount is probably less by $500 than what it would be were repairs on the house fully made as required by the Court's decree. In addition to the expenses set forth respondent has paid substantial amounts as fees to petitioner's attorneys in the past and has paid or obligated himself to pay equally large sums to his own attorneys.

When the divorce for separate maintenance was granted petitioner was given the use of the Smith home in Barrington. The house is attractively situated on Mathewson road overlooking the Barrington River, contains 13 or 14 large, high-studded rooms with hallways and bathroom. It is, however, expensive to heat and to keep in repair. In 1922 the terms of the decree relative to the house were justified but today the situation is different. Donald H., the oldest child, has reached his majority and has married. Maybelle T. will be 21 years of age in December next and Arthur L., Jr., is in his seventeenth year. The house is a potential source of contention and alteration because of its condition. A wise thing would be for the parties to agree upon a sale of all the real estate with a proper disposition of the money obtained from it but in the absence of such agreement the Court thinks it should be rented or leased in order that there may be some income from it. The petitioner, it is believed, can live much less expensively but with equal or at least reasonable comfort in a small, one-family house or in a suite of rooms sufficiently large for three persons. So located, the weekly budget for food, household expenses and clothing amounting to $74.03 (Petitioner's Exhibit 4) as submitted by petitioner could be greatly reduced; the amounts of $5 for cutting lawn and $6 for maid could be entirely eliminated while others could and would be greatly lessened. Our Supreme Court has said that a wife is entitled to no better support from her husband than he can provide for himself. (*Smith* vs. *Smith*, 146 Atlantic Rep. 626). The Court is of the opinion that the petitioner and her children during the period of their majority on an allowance of $45 per week can live in Barrington or in one of the surrounding towns on a plane wholly comparable with that on which the respondent is living. The tedium of housekeeping in a suburban town is neutralized in the case of the petitioner by the fact that she is active in vari-

ous societies, in public affairs and to an extent practices her profession which is that of a public speaker. The evidence shows that a year ago she went as a delegate to Cardiff, Wales, and that just prior to the present hearing she made a tour of the New England States.· The Court regrets the necessity of requiring petitioner to leave her present home but the present arrangement is uneconomic and the Court cannot properly require the respondent upon the evidence submitted to maintain the Barrington home for three persons which number after December 22 will be reduced to two persons.

The Court is, therefore, of the opinion, upon all the evidence, that the petition to modify should be granted in the following particulars and otherwise denied:

The allowance paid petitioner for her support and for the support of her two minor children should be reduced to $45 per week.

Petitioner should be allowed the use of the homestead estate in Barrington to September 15, 1929, and not thereafter.

Petitioner should be allowed the use of such furniture belonging to her husband, now in the Barrington house, as is reasonably needed to supplement her own furniture for the furnishing of a small house or suite of rooms sufficient for three persons; such furniture to be selected from the inventory ordered by the Court and file-marked November 20, 1928, any question as to furniture in the event that the parties are unable to agree to be submitted to the Court.

It is admitted by counsel that the question of allowance of petitioner's counsel fees is before the Court. It is in evidence that petitioner had on deposit in Rhode Island Hospital Trust Company in participation account, on October 22, 1928, the sum of $3,700, and that that amount was withdrawn on that date. It was also shown that her checking account containing on February 18, 1929, $55.68 was closed out on that date. Petitioner testified that she paid her brother $2,070 and her mother $300 in repayment of loans made to her and that she had no money on deposit ·in any Bank. She also testified that she spent $1,000 for furniture in the last year. Considering the amounts formerly on deposit, the amounts spent and also the allowance received weekly, the Court is not convinced that the petitioner is less able to pay her counsel fees than is the respondent and the motion for allowance of counsel fees is therefore denied.

For petitioner: Cooney & Cooney.

For respondent: Walling & Walling.